IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PROJECT MANAGEMENT QUALITY SERVICES, LLC., | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:18CV412 |
| ELAND INDUSTRIES INC., TIMOTHY WAYNE ENNIS, and JOSEPH COOK, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are four motions: Defendants' Motion for Intra-District Transfer Pursuant to 28 U.S.C. § 1404(a) [Doc. #7], Defendants' Motion to Dismiss for Failure to State a Claim[1], Defendants' Motion for Rule 11 Sanctions[2], and Plaintiff's Motion to Remand [Doc. #12]. Because Plaintiff's Motion to Remand is granted, each of Defendants' motions is denied as moot.

---

[1] As part of their Answer, Defendants asserted affirmative defenses but entitled one "Motion to Dismiss for Failure to State a Claim Rule 12(b)(6) of the Federal Rules of Civil Procedure or in the Alternative, Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c)", (Answer ¶¶ 97-109), and another "Motion for Rule 11 Sanctions against PMQS, Coleman and Edmonds", (id. ¶¶ 112-122). Neither purported motion complied with the Local Rules requiring that each motion be set out in a separate pleading and, with exceptions not relevant here, accompanied by a brief. See L. Civ. R. 7.3(a). Cf. L. Civ. R. 7.3(j). Nevertheless, Plaintiff responded to each motion, presuming them to be live motions. (See Pl.'s Resp. in Opp'n [Docs. #15, 16], Pl.'s Resp. [Docs. #17, 18].) Therefore, the Court is treating both motions as live and has so noted on the docket. (See Docket Entry (May 21, 2018, entered Nov. 19, 2018).)
[2] See supra n.1 for an explanation.

I.

This action began in Forsyth County Superior Court when Plaintiff Project Management Quality Services, LLC. ("Project Management") filed suit against Defendants Eland Industries, Inc. ("Eland"), Timothy Wayne Ellis, and Joseph Cook (collectively "Defendants"). (See Compl. [Docs. #1-2, 2].) Project Management provides staffing and "integrated solutions" to clients, which include private and government contractors in the nuclear power industry. (Id. ¶¶ 9, 10.) In 2017, it began discussions with Bechtel, a global engineering, construction, and project management company, about supplying piping for the Y12 Uranium Processing Facility ("the Project"). (Id. ¶ 12.) It also sent prequalification questionnaires to several potential suppliers for the Project, including Eland. (Id. ¶¶ 14, 18.) Eland and its president, Ellis, responded with information, including pricing and manufacturing capabilities, upon which Project Management relied when it submitted its bid to Bechtel identifying Eland as the manufacturer. (Id. ¶¶ 5, 18, 21-23.) In January 2018, Bechtel awarded Project Management the contract on the Project. (id. ¶ 30.)

During the bid preparation period, Cook worked for Project Management in its business development department and communicated with Bechtel on behalf of Project Management and otherwise assisted with the bid process. (Id. ¶¶ 31, 33-34.) As part of his employment, he signed an Employment Agreement that included non-compete and non-solicitation clauses. (Id. ¶ 32.) Cook was terminated in November 2017, two months before Bechtel awarded the contract to

2

Project Management, and began working for Eland a week later. (Id. ¶¶ 35, 36.) Project Management alleges that after it was awarded the contract in January 2018, Cook contacted Bechtel on behalf of Eland to encourage it to move all contracts for the Project to Eland. (Id. ¶¶ 38, 39, 48, 51, 52.) Project Management notified Ennis and Cook of Cook's Employment Agreement, but Cook was allegedly unwilling to abide by its terms. (Id. ¶¶ 41-44.)

Meanwhile, Project Management grew concerned about Eland's manufacturing capabilities for the Project. (Id. ¶¶ 45-47, 54-58.) Although the companies had circulated a proposed teaming agreement, they allegedly never finalized it. (Id. ¶ 53.) Project Management began soliciting bids from other manufacturers and sought approval from Bechtel to substitute manufacturers. (Id. ¶¶ 59, 67.) At that time, the parties' relationship devolved, attorneys became involved, (id. ¶¶ 68-76), and this action was instituted followed by Eland's suit against Project Management and others in the Eastern District of North Carolina, (see Mot. to Transfer). Project Management alleges claims of tortious interference with contract and unfair and deceptive trade practices and seeks a declaratory judgment and an injunction.

II.

Lacking complete diversity of citizenship, Defendants removed this action asserting that it "arises under federal law in that it alleges, inter alia, a dispute involving a contract with the United States, specifically a supply agreement for spooled piping to be fabricated and delivered to the 'Y-12 Uranium Processing

3

Facility.'" (Notice of Removal at 1 [Doc. #1].) Defendants further contended that "the contract at the core of the parties' dispute" is "governed by several United States regulatory bodies and arises under numerous federal laws" and that Project Management "expressly seeks in its Complaint . . . declaratory relief directly connected with the disputed government contract in connection with supplying certain spooled piping to the Y-12 Uranium Processing Facility and such relief necessarily depends upon resolution of a substantial question of federal law." (Id. at 2.)

In support of its Motion to Remand, Project Management argues that its well-pleaded Complaint asserts neither a cause of action created by federal law nor one that implicates significant federal issues. (Pl.'s Br. in Supp. of Mot. to Remand at 3-4 [Doc. #13].) Therefore, Project Management argues that the matter must be remanded to state court. (Id. at 4.)

In response, Defendants contend that "[f]irst and perhaps most significant, Plaintiff's motion to remand attempts to triage facial allegations contained in its state-filed complaint over axiomatic principles of judicial economy", an argument they make because they have separately moved to transfer this matter to the Eastern District of North Carolina where they have a pending suit against Project Management, among others. (See Defs.' Br. in Opp'n at 2 [Doc. #21]; see also id. at 1 (describing the effect of granting the motion to remand as "effectively deny[ing] [the action's] transfer and consolidation with a parallel action currently pending in the United States District Court for the Eastern District of North

4

Carolina"), 7-8 (suggesting that "Plaintiff simply ignores the reverbative bedlam that will be independently hoisted on two unsuspecting courts burdened with having to achieve telepathic consistency between them"). Ultimately, Defendants request that the motion be denied and that the action be transferred "for the purposes of judicial economy and efficiency, to save the parties unnecessary costs and expenses, and in order to avoid the risk of inconsistent adjudications". (Id. at 8.)

Sandwiched between their transfer arguments is their contention that the matters at issue in the Complaint are preempted by federal law. Specifically, Defendants argue that "the disputes between the parties fall squarely within the federally occupied field that governs both <u>the how</u> and the <u>secure manner nuclear facilities are constructed and operate</u>." (Id. at 3-5.) Accordingly, they believe the matter properly belongs in federal court.

### III.

Title 28 U.S.C. § 1441 provides, in relevant part,

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Federal district courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different States", 28 U.S.C. § 1332,

5

known as diversity jurisdiction, and "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, known as federal question jurisdiction. Because there is no diversity jurisdiction here, Defendants have the burden of demonstrating that federal question jurisdiction supports their removal. Lontz v. Tharp, 413 F.3d 435, 439 (4th Cir. 2005).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). Therefore, a court must "discern whether federal or state law creates the cause of action." Pinney v. Nokia, Inc., 402 F.3d 430, 442 (4th Cir. 2005). "[B]y and large", "federal-question jurisdiction is invoked . . . by plaintiffs pleading a cause of action created by federal law". Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005).

A.

There is "another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction," id., on which Defendants rely in their Notice of Removal. When state law creates the claims alleged in the complaint, there is a "small class of 'cases in which a well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law, in that federal law is a necessary element of one of the well-pleaded . . . claims'". Pinney, 402 F.3d at 442 (quoting Christianson v. Colt Indus.

6

Operating Corp., 486 U.S. 800, 808 (1988)). As "the Supreme Court unwaveringly has maintained", "[t]o bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." Lontz, 413 F.3d at 439 (quoting Gully v. First Nat'l Bank, 299 U.S. 109, 112 (1936) (second alteration in original)).

"Under the substantial federal question doctrine, a defendant seeking to remove a case in which state law creates the plaintiff's cause of action must establish two elements: (1) that the plaintiff's right to relief necessarily depends on a question of federal law and (2) that the question of federal law is substantial." Pinney, 402 F.3d at 442. "A plaintiff's right to relief necessarily depends on a question of federal law when 'it appears that some . . . disputed question of federal law is a necessary element of one of the well-pleaded state claims.'" Id. (quoting Franchise Tax Bd. of Cal. v. Constr. Laborer's Vacation Trust, 463 U.S. 1, 8 (1983)). Thus, "[i]f a plaintiff can establish, without the resolution of an issue of federal law, all of the essential elements of his state law claim, then the claim does not necessarily depend on a question of federal law." Id. Furthermore, "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Grable & Sons Metal Prods., Inc., 545 U.S. at 313. "[E]ven when the state action discloses a contested and substantial federal question, . . . the federal issue will ultimately qualify for a federal forum only if

federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." Id. at 313-14. Ultimately, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 314.

These principles have been applied in cases involving federal contracts in which plaintiffs asserted state causes of action. In FastMetrix, Inc. v. ITT Corp., 924 F. Supp. 2d 668, 671 (E.D. Va. 2013), the parties entered into a teaming agreement according to which FastMetrix would provide exclusive support for ITT's proposal to the National Geospatial-Intelligence Agency ("NGA") for the InnoVision Omnibus Contract ("prime contract") in exchange for a future subcontract with ITT under the prime contract. ITT was awarded the prime contract, after which ITT and FastMetrix entered into a subcontract according to which FastMetrix would be responsible for activities relating to three-dimensional laser radar imaging and laser topographic mapping. Id. However, FastMetrix alleged that ITT diverted the work to its own employees and other companies. Id. It sued ITT for breach of the subcontract, unjust enrichment, misappropriation of trade secrets, fraud, and business conspiracy. Id. ITT removed the action to federal court on the basis that the complaint presented a substantial question of federal law because "the breach of contract claim 'necessarily depend[ed] on an evaluation of NGA's decisions to articulate requirements and allocate work under

8

the [prime contract], a procurement for research and development tasks for military and national intelligence uses, an area of 'uniquely federal' interest." Id. at 672 (second alteration in original). FastMetrix moved to remand. Id.

The court found that ITT's proffered bases for federal question removal were not elements of the state law claims and were not required to establish the claims. Id. The court also found that the federal question identified by ITT in the removal notice – the evaluation of NGA's allocation of work under the prime contract – did not need to be resolved for FastMetrix to prevail on its state law claims. Id. at 674. "At best, an evaluation of the NGA's allocation of work under the prime contract arises merely as a defense to FastMetrix's claims", which would not support removal. Id. at 674-75. Because FastMetrix neither pled a federal cause of action on the face of its complaint nor did any of its state law claims necessarily depend on the resolution of a substantial federal question, remand was ordered. Id. at 675.

A similar outcome resulted from the plaintiff's motion to remand in L-3 Communications Corp. v. Serco Inc., 39 F. Supp. 3d 740 (E.D. Va. 2014). Serco was a prime contractor with the United States Air Force Space Command responsible for testing and upgrading designated Air Force sites around the world to protect them from high-altitude electromagnetic pulse events like nuclear explosions. Id. at 743. Because Serco was not capable of providing this testing and maintenance, it hired subcontractors like L-3 Communications which had proprietary and specialized equipment and software to conduct these services. Id. L-3 Communications alleged unlawful interference after Serco, knowing that L-3

9

Communications' employees were bound by employee confidentiality agreements, worked with those employees to steal technology, business methods, and employees to create a new company to which it would grant future subcontracts. Id. at 742, 743-44. L-3 Communications moved to remand after Serco removed the action to federal court. Id. at 742-43.

Serco argued that a substantial and disputed federal question existed because the prime contract and subcontract were governed by federal regulation and "'there [was] no way that a court [could] adjudicate [the tortious interference claims] without resolving substantial and disputed questions of federal law.'" Id. at 747 (third alteration in original). While the "case [had] several federal elements – Defendant [was] a prime contractor for the Air Force and the parties [had] a long history of contractual agreements related to work on federal projects", the court explained that "'it takes more than a federal element to open the arising under door'." Id. (quoting Empire Healthchoice Assurance Inc. v. McVeigh, 547 U.S. 677, 701 (2006)). "Federal jurisdiction [was] not conferred simply because a contract-driven claim involve[d] federal regulations, such as [Federal Acquisition Regulations], or because the contracts [were] 'federal in nature.'" Id. at 748. The court was similarly unpersuaded by Serco's argument that uniquely federal interests existed because the matter involved a contract related to national security. Id. at 749. The court characterized this matter as having only a "tangential connection to national security via a defense subcontract" and explained that "[c]ourts have repeatedly found such contracts are not directly

10

related to national security." Id. Ultimately, not only did the dispute not involve a uniquely federal interest, but the relief L-3 Communications sought for its state law claims could be awarded without interpreting any disputed federal law or statute. Id. at 746. Accordingly, the matter was remanded. Id. at 750.

This matter is similar to FastMetrix or L-3 Communications. Defendants argued in their Notice of Removal that the contracts at issue here "are governed by several United States regulatory bodies and arise[] under numerous federal laws" and the declaratory relief that Project Management seeks "necessarily depends upon resolution of a substantial question of federal law." (Notice of Removal ¶¶ 4, 5.) To the extent that Defendants still maintain that this argument provides an avenue for removal[3], that route to federal court is closed.

In their Notice of Removal, Defendants identify no less than nine purported federal regulatory bodies and laws governing "[a]ll supply agreements to the Y-12 Uranium Processing Facility" to convince the Court that "[t]his action arises under federal law". (Id. ¶¶ 3, 4.) However, the causes of action asserted by Project Management do not arise under federal law. It is true that Project Management alleges it expanded its business to include the supply of bulk and spool piping as part of government contracts in the nuclear power industry and that it bid for and won a contract with Bechtel to supply piping for the Y12 Uranium Processing Facility. (Compl. ¶¶ 11-13, 21, 30.) But, Project Management seeks relief for

---

[3] Defendants do not rely on this basis for removal in their opposition to remand.

11

Ennis's alleged tortious interference with the Employment Agreement between Cook and Project Management and the contract between Bechtel and Project Management and for Defendants' corresponding unfair and deceptive trade practices. (Id. ¶¶ 89-101.) Project Management also seeks a declaratory judgment that it has no contractual obligations to Eland or Ellis and requests an injunction restraining Defendants from contacting Bechtel[4]. (Id. ¶¶ 84-88, 102-07.)

To prove tortious interference with contract, Project Management will have to show a valid contract between it and a third person which confers upon it a contract right against the third person about which Ennis knew but nevertheless intentionally and without justification induced the third person not to perform, damaging Project Management. United Labs., Inc. v. Kuykendall, 370 S.E.2d 375, 387 (N.C. 1988). To prove Eland and Ennis acted unfairly or deceptively in violation of N.C. Gen. Stat. § 75-1.1, Project Management will have to show "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, which (3) proximately caused [it] actual injury". Boyce & Isley, PLLC v. Cooper, 568 S.E.2d 893, 901 (N.C. Ct. App. 2002); see also Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001) (providing prima facie elements of a claim for unfair trade practices

---

[4] Project Management is also under the impression that it seeks "an injunction against a former employee, Joseph Cook" and cites paragraphs 102-07 as support. (See Pl.'s Br. in Supp. of Mot. to Remand at 2.) While its fourth cause of action seeking an injunction begins by focusing on Cook and his Employment Agreement, it then shifts to allege that Project Management will sustain further injury if Defendants are not restrained from contacting Bechtel. In its requested relief, Project Management requests only one injunction – one restraining Defendants from contacting Bechtel.

12

and defining an unfair practice and a deceptive practice). For a court to declare that Project Management has no current contractual obligation to Eland or Ellis, it will have to determine whether the parties manifested mutual assent to the terms of an agreement presently binding on Project Management. See, e.g., Schwarz v. St. Jude Med., Inc., 802 S.E.2d 782, 789-92 (N.C. Ct. App. 2017). No necessary element of any of these claims is a disputed question of federal law. This is not a case in which the "right to relief necessarily depends on the resolution of a substantial question of federal law." Consequently, it is unnecessary to evaluate the application of the other requirements for jurisdiction based on a substantial federal question.

B.

Perhaps anticipating the weakness of that basis for removal, Defendants omit it from their opposition to remand and, instead, argue preemption. Although they cite the doctrine of complete preemption as support for removal, they later fail to recognize the distinction between complete preemption – which Defendants never again discuss – and field preemption – on which Defendants ground their entire argument. (See Defs.' Br. in Opp'n at 2-5.) Field preemption exists when "a scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room to supplement it". Va. Uranium, Inc. v. Warren, 848 F.3d 590, 594 (4th Cir. 2017) (quoting Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 204 (1983)). Indeed, as Defendants argue, the Supreme Court has found that Congress "intended that the

13

federal government should regulate the radiological safety aspects involved in the construction and operation of a nuclear plant" while "States retain their traditional responsibility in the field of regulating electrical utilities for determining questions of need, reliability, cost and other related state concerns." Pacific Gas & Elec. Co., 461 U.S at 204. But, this type of "[o]rdinary preemption has been categorized as a federal 'defense to the allegations'" and does "not provide a basis for removal." Lontz, 413 F.3d at 440 (quoting Caterpillar, 482 U.S. at 392, and Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003)).

On the other hand, complete preemption is a basis for removal, albeit a rare one, id., that "applies in a very narrow range of cases", Johnson v. Am. Towers, LLC, 781 F.3d 693, 701 (4th Cir. 2015). "[F]ederal law occasionally displace[s] entirely any state cause of action" such that "federal law then 'provide[s] the exclusive cause of action for such claims,' and therefore 'there is . . . no such thing as a state-law claim' in the regulated area." Lontz, 413 F.3d at 440 (quoting Franchise Tax Bd., 463 U.S. at 23, and Beneficial Nat'l Bank, 539 U.S. at 11) (alterations in original). "[T]he federal claim is treated as if it appears on the face of the complaint because it effectively displaces the state cause of action." Id. at 441.

It is not enough "that the preempting statute . . . create a federal cause of action, but [it] must also show that Congress intended it to 'provide the exclusive cause of action' for claims of overwhelming national interest." Id. (quoting Beneficial Nat'l Bank, 539 U.S. at 9, 11.) "[D]efendants seeking removal under

the doctrine of complete preemption bear a significant burden. They must establish congressional intent to extinguish similar state claims by making the federal cause of action exclusive. And . . ., reasonable doubts must be resolved against the complete preemption basis for [removal]." Id.

The Fourth Circuit Court of Appeals has "recognized a presumption against finding complete preemption", Johnson, 781 F.3d at 701, and the Supreme Court is "reluctant" to find complete preemption, Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987), having done so in only three statutes – the National Bank Act, ERISA § 502(a), and Labor Management Relations Act ("LMRA") § 301, Lontz, 413 F.3d at 441.

Courts are careful to recognize that "[f]ederalism concerns strongly counsel against imputing to Congress an intent to displace a whole panoply of state law in [a certain] area absent some clearly expressed direction." Johnson, 781 F.3d at 701 (alterations in original). For example, in Caterpillar, the Court acknowledged that complete preemption applies in cases raising claims under § 301 of the LMRA, which "governs claims founded directly on rights created by collective-bargaining agreements" and those that are "substantially dependent on analysis of a collective-bargaining agreement." 482 U.S. at 394. But, when Caterpillar argued that § 301 preempted the plaintiffs' claims that Caterpillar breached their employment agreements, the Court found that § 301 "says nothing about the content or validity of individual employment contracts". Id. While the plaintiffs "possessed substantial rights under the collective agreement, and could have

15

brought suit under § 301 . . . they chose not to do so." Id. at 395. The plaintiffs, covered by a collective-bargaining agreement, were "permitted to assert legal rights independent of that agreement, including state-law contract rights, so long as the contract relied upon is not a collective-bargaining agreement." Id. at 396. This is so because "it would be inconsistent with congressional intent under [§ 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." Id. at 395 (alteration in original).

As forecast earlier, Defendants have proffered no argument in their opposition to remand in support of complete preemption and, therefore, have failed to rebut the presumption against it. A search of their other arguments from which to infer support for complete preemption turns up empty. In their field preemption argument, Defendants refer to the Nuclear Regulatory Commission, but only in the context of field preemption. In their Notice of Removal, they identify general federal statutes and regulations – "The Federal Acquisition Regulation(s)", "Defense Federal Acquisition Regulation Supplement(s)", "Department of Energy Acquisition Regulation ('DEAR') clauses codified as 48 C.F.R. pts. 1-53", and the "Civil False Claims Act ('FCA') codified at 31 USC [sic] §§ 3729-3733". But, they fail to identify any particular federal statute or regulation that Congress intended to be the exclusive cause of action for any of Project Management's claims. In short, Defendants have not identified a federal cause of action that Congress intended to be the exclusive cause of action for Project Management's claims of tortious

interference with contract or unfair and deceptive trade practices or for its requested declaratory judgment or injunction.

C.

As a final effort to save this matter from remand, Defendants argue that Project Management has artfully drafted its Complaint to avoid federal jurisdiction and that the Court may look beyond the allegations to the substance of the Complaint. (Defs.' Br. in Opp'n at 2-3, 5-7.) They contend that "Plaintiff's complaint clearly refers to a dispute between the parties that is manifestly interfused with both the safety and the 'construction and operation' of the Y-12 nuclear enrichment facility located in Oak Ridge, Tennessee – regulated by the NRC." (Id. at 5.) They believe that Project Management has undertaken "vigilant efforts to carefully frame the facts and issues" with "generous usage of euphemisms . . . to transfigure the appearance of the removed state-court action to a mere garden-variety dispute between businesses, the gravamen is both firmly rooted and revealed in several of its own paragraphs". (Id. at 5-6.) Meanwhile, "the Plaintiff completely omits the purpose and design of the very piping to be 'supplied' to the Y-12 Uranium Process Facility, which necessarily includes a 'direct and substantial' effect on the safe functioning of enrichment plant". (Id. at 6.) Defendants argue that "the complaint is conspicuously devoid of any collateral facts, actions, or claims for relief that are disconnected, unrelated or truncated from the transactions and occurrences directly sourced from the dispute arising

17

from supplying piping for the Y-12 Uranium Process Facility" and, instead, asserts "pedestrian claims for relief presumably based on state law". (Id. at 7.)

The Supreme Court has recognized as an "'independent corollary' to the well-pleaded complaint rule . . . the further principle that 'a plaintiff may not defeat removal by omitting to plead necessary federal questions.'" Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998) (quoting Franchise Tax Bd., 463 U.S. at 22). Beyond this basic premise, though, "the artful-pleading doctrine lacks precise definition and has bred considerable confusion." Joan E. Steinman & Mary Kay Kane, 14C Federal Practice & Procedure § 3722.1 (4th ed. Sept. 2018 Update). The "most common manifestation" of the artful pleading doctrine arises in cases "where federal law completely preempts a plaintiff's state-law claim." Id.; Rivet, 522 U.S. at 475. Another class of cases some courts have "characterized as entailing artful pleading involves situations in which federal issues are embedded within state-law causes of action." Steinman & Kane (characterizing Bryan v. Bellsouth Commc'ns, Inc., 377 F.3d 424 (4th Cir. 2004), as "noteworthy"); see, e.g., Bryan, 377 F.3d at 428-32 (finding that the "only plausible reading" of the complaint, in which plaintiff claimed that Bellsouth's service charge was excessive and an unfair and deceptive trade practice, was that it asserted an action seeking to alter the rate which presented a federal question).

As explained above, no federal cause of action completely preempts Project Management's claims and no necessary question of federal law must be resolved. This case is simply not in the class of cases in which courts have found the artful

pleading doctrine applicable. Despite whatever federal causes of action Defendants believe Project Management could have brought here, Project Management chose to seek judicial resolution of basic contract disputes based on state law that do not arise under federal law.

IV.

Project Management includes in its motion to remand a request that Defendants pay its costs and expenses, including attorney's fees, incurred as a result of the removal pursuant to 28 U.S.C. §1447(c). (Mot. to Remand ¶ 5.) Title 28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." The Supreme Court has explained that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 136 (2005). "In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case", but a court's "reasons for departing from the general rule should be faithful to the purposes of awarding fees under § 1447(c)." Id. at 141. These purposes include "deter[ring] removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." Id. at 140.

Because its motion to remand is granted, Project Management is afforded thirty days from the date this Memorandum Opinion and Order is filed to support its request for costs and attorney's fees. In so doing, it must provide legal support for the position that Defendants lacked an objectively reasonable basis for removal, including defining the phrase "objectively reasonable" in the context of removal. In addition, it must provide the requisite documentation of and legal basis for the costs and expenses that it requests. Defendants have twenty days to respond to Project Management's filing.

V.

For the reasons explained herein, IT IS HEREBY ORDERED that Plaintiff Project Management Quality Services, LLC.'s Motion to Remand [Doc. #12] is GRANTED IN PART in that this action is REMANDED to state court. The Court reserves ruling on the request for costs and expenses until after the parties have further briefed the issue as described above. IT IS FURTHER ORDERED that Defendants' Motion for Intra-District Transfer Pursuant to 28 U.S.C. § 1404(a) [Doc. #7], Defendants' Motion to Dismiss for Failure to State a Claim, and Defendants' Motion for Rule 11 Sanctions are DENIED AS MOOT.

This, the 19th day of December, 2018.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge